UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CHRISTINE MCDONALD,

      Plaintiff,

v.                                 Case No.  5:20-cv-222-SPF

KILOLO KIJAKAZI, Commissioner of
the Social Security Administration,[1]

      Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision failed to provide good cause for rejecting Plaintiff's treating psychiatrist's opinions, the Commissioner's decision is reversed and remanded.

### I.      Procedural Background

Plaintiff filed an application for DIB (Tr.168-69).[2]  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 55-70, 72-82).  Plaintiff then requested an administrative hearing (Tr. 97).  Per Plaintiff's request, the ALJ held a

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] All references to "Tr." refer to the transcript and page numbers of the Social Security administrative record filed on November 30, 2020 (Doc. 17).

hearing at which Plaintiff appeared and testified (Tr. 31-55).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 9-29).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-7).  Plaintiff then timely filed a complaint in district court, and upon consideration, United States Magistrate Judge Philip R. Lammens reversed the ALJ's decision, finding "the ALJ did not clearly articulate reasons for disregarding [Plaintiff's treating psychiatrist] Dr. Sharma's opinions that are supported by substantial evidence." (Tr. 3467-3475).  The district court remanded the case for further proceedings (*Id.*). Thereafter, the Appeals Council vacated the Commissioner's final decision and remanded the case to an ALJ for further proceedings (Tr. 3452).  Because Plaintiff had filed a subsequent claim for Titlt II disability benefits on September 6, 2018, the Appeals Council consolidated Plaintiff's claims (*Id.*).

The same ALJ held another hearing at which Plaintiff appeared and testified (Tr. 3416-47).  Following the hearing, the ALJ again issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 3392-3415).  Plaintiff timely filed this action (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1966, claimed disability beginning September 30, 2014 (Tr. 34, 55).  Plaintiff has a high school education (Tr. 34).  Plaintiff served in the U.S. Army for nine years, working as a medic (Tr. 35).  Thereafter, she stayed home with her daughter, then worked at Conimar Corporation from 1996 through 2014 as a technician

(Tr. 34-35, 252).  Plaintiff alleged disability due to post-traumatic stress disorder (PTSD), depression, irritable bowel syndrome (IBS), acid reflux, and obesity (Tr. 183).

In rendering the most recent administrative decision, the ALJ recognized the district court's remand and the Appeals Council's directions to complete further administrative review and issue a new decision (Tr. 3395).  Upon consideration, the ALJ for the second time concluded that Plaintiff met the insured status requirements through December 31, 2019, and had not engaged in substantial gainful activity since September 30, 2014, the alleged onset date (Tr. 3397).  After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: obesity, affective disorders, anxiety disorders, carpal tunnel syndrome, and personality disorders (Tr. 3397).  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 3398).  The ALJ then concluded that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of light work "except she could perform light work which requires up to 30 days to learn the techniques, acquire the information, and develop the facility for average performance in a specific job situation.  She could lift or carry 10 pounds frequently, and 20 pounds occasionally (from very little, up to 1/3 of an 8-hour workday).  She could stand and/or walk for a total of 6 hours and sit for a total of 6 hours (with normal breaks) in an 8-hour workday.  She is left hand dominant and could perform activities requiring both gross and fine frequent manipulation and fingering with her left hand.  Due to mild to moderate pain and medication side effects, she should avoid hazards

3

in the workplace such as unprotected areas of moving machinery; heights; ramps; ladders; scaffolding; and on the ground, unprotected areas of holes and pits.  She could perform each of the following postural activities occasionally: balancing, stooping, crouching, kneeling, and crawling; but not climbing of ropes or scaffolds, and of ladders exceeding 6 feet.  She has no non-exertional mental limitations which frequently affect her ability to concentrate on complex or detailed tasks, but she would remain capable of understanding, remembering, and carrying out the job instructions defined earlier; making work related judgements and decisions; responding appropriately to supervision, co-workers, and work situation; and dealing with changes in a routine work setting.  She should avoid stressful situations and can only occasionally work with co-workers in a team; work directly with the public; work with supervisors or co-workers when interpersonal interactions or discussion is required; make decision; and use judgement" (Tr. 3399-3400).   In formulating Plaintiff's RFC, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and the other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p" (Tr. 3407).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform her past relevant work (Tr. 3407).  However, considering Plaintiff's age, education, work experience, and RFC, the ALJ opined that there are jobs Plaintiff can perform in the national economy, including bench assembler, sorter/grader, and office helper (Tr. 3408).  Accordingly, the ALJ found Plaintiff not disabled (Tr. 3409).

4

### III.   Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a).  Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §

404.1520(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**IV.    Analysis**

Plaintiff asserts the ALJ erred by failing to properly consider the opinions of her treating psychiatrist, Ganga Sharma, M.D., and licensed clinical social worker (LCSW) Bettina Marks (Doc. 29, pp. 25-35).  Plaintiff also asserts that the ALJ failed to consider the opinion of LCSW Marks as an "other source" pursuant to the regulations and SSR 06-03p; and failed to provide substantial evidence to support his RFC finding and VE hypothetical.  For the reasons that follow, the Court finds that the ALJ failed to provide good cause for rejecting Dr. Sharma's opinions.

**A. Whether the ALJ properly considered the opinions of Dr. Sharma[3]**

This case came before the ALJ on remand from the Appeals Council based on the district court's finding that "the ALJ did not clearly articulate reasons for disregarding Dr. Sharma's opinions that are supported by substantial evidence."  *McDonald v. Comm'r of Soc. Sec.*, case no. 5:18-cv-454-Oc-PRL, doc. 24; Tr. 3467-3475.  Plaintiff asserts that, despite the Appeals Council's remand instruction, the ALJ again erred by failing to properly consider the opinions of Dr. Sharma.  Specifically, Plaintiff admonishes the ALJ for again finding Dr. Sharma's opinions "only partially consistent with and not bolstered by the MER [medical evidence of record]" and "us[ing] the exact same reasons [ ] rejected by the district court's remand order" (Doc. 29, p. 25).

---

[3]  The parties addressed two issues together in "Issue No. 1": whether the ALJ properly considered the opinion of Dr. Sharma and whether the ALJ properly considered the opinion of LCSW Marks.  The Court will address these issues separately.

In assessing whether a claimant can—despite any physical or mental impairments—obtain and perform any type of work that exists in substantial numbers in the national economy, the ALJ must give special attention to the opinions of a claimant's treating physician. *Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094 (11th Cir. Aug. 12, 2021). The SSA regulations applicable at the time Plaintiff filed her application required an ALJ to give "controlling weight" to a treating physician's opinions if they were "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence in [the] case record."[4] *Id.* quoting 20 C.F.R. § 404.1527(c)(2). Eleventh Circuit case law dictates that a treating physician's opinion must be given substantial or considerable weight unless good cause is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).[5] Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted).

---

[4] Although the Commissioner revised the rules regarding evaluation of medical evidence on January 18, 2017, the revisions became effective March 27, 2017, and the new regulations only apply to applications filed on or after that date. *See* 20 C.F.R. § 404.1520c. Because Plaintiff filed her claims for benefits before March 27, 2017, the rules in § 404.1527 govern here.

[5] Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (*quoting* 20 C.F.R. § 404.1527(a)(2)).

While an ALJ may choose to reject a treating physician's findings when there is good cause, "he must clearly articulate [the] reasons for doing so." *Simon*, at 1104 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)). As the *Simon* court explained:

> If the ALJ fails to state reasonable grounds for discounting such evidence, we will not affirm "simply because some rationale might have supported the ALJ's conclusion." (citation omitted). It is the responsibility of the [SSA], not the reviewing court, to supply the justification for its decision and to sufficiently explain "the weight [it] has given to obviously probative exhibits." (citation omitted).

*Simon*, at 1105. In *Simon*, the Eleventh Circuit reversed the district court's decision, finding the ALJ failed to state good cause to discount the opinions of the claimant's treating psychiatrist. The ALJ in this case likewise erred.

As in *Simon*, the administrative record here contains extensive treatment notes from Plaintiff's psychiatrist Dr. Sharma spanning from before the alleged onset date (September 30, 2014) through the date she last met the SSA's insured status requirements (December 31, 2019). Dr. Sharma diagnosed Plaintiff with depression and chronic post-traumatic stress disorder (PTSD), and throughout his lengthy treatment, he described her severe symptoms of mental illness such as suicidal thoughts, auditory and visual hallucinations, flashbacks, crying spells, and dissociative episodes (Tr. 1066, 1276-1277, 1342-1343, 1420-1421, 1455-1456, 1481-1482, 1493-1494, 1504-1505, 1664-1665, 1703, 1716, 1734, 2480, 2501-2502, 3213-3214, 4572-4573).

On June 23, 2015, Dr. Sharma completed a Mental Residual Functional Capacity Questionnaire indicating he first evaluated Plaintiff in December 2010. Dr. Sharma explained that Plaintiff receives weekly individual therapy with psychiatric follow up

appointments once a month.  He described his clinical findings as "despondent, dysphoric, tearful, pessimistic, diminished interests, has audio, visual hallucinations, illusions, flashbacks, dissociative episodes, suicidal ides" and her prognosis as "guarded" (Tr. 1224). Dr. Sharma opined that Plaintiff's mental ability and aptitudes needed to do unskilled work were "extremely limited" with regard to maintaining regular attendance and punctuality, working in coordination with or proximity to others without being unduly distracted, completing a normal workday and workweek without interruptions from psychologically based symptoms, and dealing with normal work stress (Tr. 1226).  Dr. Sharma further opined that Plaintiff's mental abilities and aptitudes needed to do semiskilled and skilled work were also "extremely limited" with regard to understanding and remembering detailed instructions, carrying out detailed instructions, and dealing with stress of semiskilled and skilled work (Tr. 1227).  In support of these limitations, Dr. Sharma explained that "based on follow ups over time [Plaintiff] remains symptomatic despite [increasing] medications" (Tr. 1227).  Dr. Sharma opined that Plaintiff cannot satisfactorily perform the following:  interacting appropriately with the general public, traveling in unfamiliar places, and using public transportation (Tr. 1227).  He also opined Plaintiff is "seriously limited" in her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness (Tr. 1227).  Dr. Sharma opined these deficits are "related to her significant PTSD" (Tr. 1227).

On March 27, 2017, Dr. Sharma completed a Mental Capacity Source Statement again setting forth his diagnoses:  PTSD, chronic following military combat, major depressive disorder (Tr. 1238).  Dr. Sharma opined that Plaintiff has "extreme limitations"

is sustained concentration and persistence; "marked" limitations in social interaction; and "marked" to "extreme limitations" in adaptation.[6]   On the form, Dr. Sharma noted his "extensive documentation in clinic notes;" described Plaintiff as "credible;" and indicated his opinions are based on "direct observation/ treatment, historical medical records, patient report, psychological/ psychiatric evaluations, counseling/ therapy records, and inpatient records (Tr. 1239-1240).

Thereafter, on December 12, 2017, Dr. Sharma wrote a letter describing Plaintiff's status: "She continues to feel depressed, has little energy or motivations, isolates herself, has persistent anxiety with flare ups, sleep poor with frequent nightmares and night sweats, with awakenings during the night.   She hears sounds, sees shadows, and has flashbacks and dissociative episodes.   She is forgetful, not able to concentrate or maintain focus.   She has not gotten over suicidal ideas and at times has talked about plans, such as driving into the back of a truck.   She has had periods where she has cut herself" (Tr. 3631). Dr. Sharma opined that "[i]n spite of the treatments, she continues to have extreme limitation of her psychosocial functioning.   She is not yet capable of functioning independently, effectively or appropriately in any of the areas" (*Id.*).   Unfortunately, Dr. Sharma indicated Plaintiff has experienced "minimal change with various medications in therapeutic doses" (*Id.*).

In his most recent decision, the ALJ opined that, after careful consideration of the entire record, Plaintiff retains the residual functional capacity to perform a restricted range

---

[6] The form defines an "extreme limitation" as "no useful ability to function" and defines a "marked limitation" as "two thirds of an eight-hour work day." (Tr. 1238).

of light work (Tr. 3399-3400).  Although the ALJ had concluded in his first decision that

Plaintiff could perform a reduced range of medium work (Tr. 12-24), the ALJ's discussions

supporting these two conclusions are nearly identical.  In both, the ALJ stated:

> The undersigned has considered Dr. Sharma's opinions and finds them only
> partially consistent with and not bolstered by the MER.  Many of the mental
> status examinations have been mostly benign and many of the VA mental health
> records document that the claimant was "well groomed" with a "stable mood and
> full range of affect" (Ex. 5F, p. 119).  Further, evidence shows that when the
> claimant was off her medication, her symptoms reappear. For instance, the
> claimant was off her psychiatric medications for a couple of weeks and then had
> suicidal ideations (Ex. 17F, p. 143).  Further, Dr. Sharma anticipates the claimant
> would miss four or more days of work due to the symptoms and impairments but
> does not support that view.  The determination of disability under the Social
> Security Act is reserved for the Commissioner [sic] Social Security
> Administration.  Based upon the evidence, it appears Dr. Sharma has taken the
> claimant's subjective allegations at face value in making his opinions.

(Doc. 17-2, p.18; Tr. 3401).[7]  Attempting to satisfy the district court's remand instruction

"to clearly articulate reasons for disregarding Dr. Sharma's opinions supported by

substantial evidence," the ALJ inserted five additional paragraphs into his new discussion.

The new paragraphs refer to nine treatment notes from various dates that purportedly

establish that Plaintiff's logical thought process, "normal" mental status exams, and the

like show that Plaintiff's "symptoms and exam findings are not as consistently severe as

---

[7] In both decisions, the ALJ also noted that in October 2014 (when Plaintiff was Baker
Acted due to suicidal ideation) another psychiatrist "recorded there was some suspicion
of secondary gain in the claimant's presentation" (Tr. 3401 citing Ex. 1F, p.55).  It is
surprising that the ALJ re-used this sentence in his new decision as Judge Lammens
questioned it.  *McDonald v. Comm'r of Soc. Sec.,* case no. 5:18-cv-454-PRL, Doc. 24, at p.8
("… the ALJ did not cite any evidence showing that this suspicion was borne out.
Moreover, Dr. Sharma did not document concerns that Plaintiff was malingering or being
untruthful.  To the contrary, he consistently noted that Plaintiff was aware of her problems
and motivated for treatment.")

asserted by Dr. Sharma" (Tr. 3402).  Based on these records, the ALJ concluded that he "does not find Dr. Sharma's opinion to be bolstered by the evidence" (Tr. 3401).  The ALJ further found "[t]his evidence is not consistent with marked to extreme limitation in sustained concentration, social interaction, and adaptation as alleged by Dr Sharma" (Tr. 3402).  The ALJ noted that other examiners have not consistently recorded symptoms and exam findings as severe as asserted by Dr. Sharma (*Id.*).  For instance, the ALJ asserted that "[e]xaminers do not indicate problems completing the basic exam tasks or a need for frequent redirection" (*Id.*).  Thus, the ALJ opined that Dr. Sharma's extreme to marked limitations in sustained concentration, persistence and maintaining pace were only "partially consistent with and not bolstered by other substantial evidence in the record" (Tr. 3402).

Upon review of Dr. Sharma's extensive treatment notes, however, this Court cannot find substantial evidence to support the ALJ's conclusion.  The ALJ focused on Plaintiff's mental status examinations and depression, but failed to discuss Plaintiff's PTSD and self-destructive behaviors.  The ALJ addressed Plaintiff's behavior and demeanor at a handful of appointments, but neglected to address her isolation, crying spells, recurrent suicidal ideations, borderline personality traits, flashbacks, or her reports of "noises in her head."  These significant symptoms are not only noted by Dr. Sharma,[8] but also by LCSW Marks, by providers who treated Plaintiff as an in-patient during her multiple psychiatric hospitalizations, and by Community Support Mental Health Program

---

[8] *See* (Tr. 1066, 1276-1277, 1342-1343, 1420-1421, 1455-1456, 1481-1482, 1493-1494, 1504-1505, 1664-1665, 1703, 1716, 1734, 2480, 2501-2502, 3213-3214, 4572-4573).

case managers.  *See generally* Tr. 1212, 1219, 1365, 1644, 1648, 1950-1951, 2256, 2344, 2361, 2458, 3716-3717, 3724-3725, 3729.  Accordingly, as in *Simon*, this Court finds that the ALJ mischaracterized Dr. Sharma's medical records.  *See Simon*, 7 F.4th at 1106 ("We conclude that isolated entries in Dr. Turner's treatment notes indicating that Simon was at times stable on his meds, without more, cannot constitute or contribute to good cause to reject Dr. Turner's opinions.").  This error requires remand.[9]

Relatedly, as in *Simon*, the ALJ erred by concluding that Dr. Sharma's references to the Plaintiff being "well-groomed" with a "stable mood and full range of affect" or his description of Plaintiff's judgment as "good" or her appearance as "normal" were inconsistent with his finding that Plaintiff suffers from debilitating mental illness.[10]  *See Simon*, at 1106.   Although *Simon* involved a claimant diagnosed with bipolar disorder, Plaintiff's mental health diagnoses, depression and PTSD, are chronic conditions too.

---

[9] In support of his conclusion that "exam findings dating back to beginning of the relevant period are also inconsistent with the symptom severity asserted by Dr. Sharma," the ALJ cites to Ex. 13F/13, an October 23, 2004 exam noting Plaintiff's "non-descriptive mood and calmed affect" (Tr. 3401).  As Plaintiff indicates, the ALJ reference to this note is problematic.  The exam was not by Dr. Sharma, but by a nurse as part of a nursing shift change task at 12:30 a.m. The note also indicates, "Vet lies in bed and is observed with her eyes closed during my initial patient rounds" (Tr. 1762) and occurred while Plaintiff was hospitalized from October 17-23, 2014 due to "debilitating depression," "support system unable to manage intensity of symptoms safely," "anxiety and associated signs/symptoms increasing/ uncontrolled," and "impulsive, agitated, unable to follow directions" (Tr. 1768).

[10] In fact, as Judge Lammens's remand order indicates, the treatment note the ALJ cited in support of his conclusion that "many of the mental status examinations have been mostly benign and many of the VA mental health records document that claimant was 'well groomed; with a 'stable mood and full range of affect'" was not even authored by Dr. Sharma. Rather, LCSW Marks completed that note the day after Plaintiff was discharged from a ten-day psychiatric hospitalization.  *See* Ex. 5F/p.119, Tr. 1089; *McDonald v. Comm'r of Soc. Sec.,* case no. 5:18-cv-454-PRL, Doc. 24.

Chronic mental disorders are characterized by "unpredictable fluctuation of their symptoms, and this it is not surprising that even a highly unstable patient will have good days or possibly good months." *Id.* (quoting *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)). For those who suffer from chronic disorders, "'a snapshot of any single moment says little about [a person's] overall condition,' and an ALJ who relies on such snapshots to discredit the remainder of a psychiatrist's findings demonstrates a 'fundamental, but regrettably all-too-common, misunderstanding of mental illness.'" *Id.* (quoting *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011)). And, "it is improper for an ALJ to dismiss a psychiatrist's treatment notes as 'indicating only mild limitations … at best' simply because 'some of [the claimant's] mental-status examination were better than others.'" *Id.* (quoting *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1262 (11th Cir. 2019)). Similar to the claimant in *Simon*, the Plaintiff's diagnoses of recurrent depression and PTSD caused Plaintiff to experience more serious symptoms than those acknowledged by the ALJ. These conditions, in Dr. Sharma's opinion, resulted in significant limitations on Plaintiff's mental and social functioning. Hence, this Court concludes that the entries in Dr. Sharma's treatment notes indicating Plaintiff was at times "normal," without more, cannot constitute good cause to reject Dr. Sharma's opinions.

To the extent the ALJ found that Dr. Sharma's opinions "only partially consistent with and not bolstered by the MER" (Tr. 3401, 3402), the Court also finds error. In support of this conclusion, the ALJ posits that "it appears Dr. Sharma has taken the claimant's subjective allegations at face value in making his opinions" (Tr. 3401). However, a "psychological assessment is by necessity based on the patient's report of

symptoms and responses to questioning" and "it's illogical to dismiss the professional opinion of an examining psychiatrist or psychologist simply because that opinion draws from the claimant's reported symptoms." *Roundtree v. Saul*, case no. 8:18-cv-1524-T-SPF, 2019 WL 4668174, at *4 (M.D. Fla. Sept. 25, 2019) (quoting *Aurand v. Colvin*, 654 F.App'x 831, 837 (7th Cir. 2016)).  Second, to the extent that the ALJ labels Dr. Sharma's opinions "inconsistent" with other record evidence, the Court finds no "genuine" inconsistency. In *Simon*, the Eleventh Circuit found that the ALJ had failed to identify a "genuine" inconsistency between the treating psychiatrist's opinions and the assessments of consultative doctors, explaining:

> "It is not enough merely to point to positive or neutral observations that create, at most, a trivial and indirect tension with the treating physician's opinion by proving no more than that the claimant's impairments are not all-encompassing." *Schink*, at 1263.  Consequently, when a claimant has been diagnosed with the types of mental and emotional disorders at issue here, highly generalized statements that the claimant was "cooperative" during examination, that he exhibited "organized speech" and "relevant thought content," or that he showed "fair insight" and "intact cognition," ordinarily will not be an adequate basis to reject a treating physician's opinions. *Id.* at 1262.  Nor is it enough to say that the claimant is 'intelligent enough to understand and follow orders and to solve problems,' such as serial sevens, because "highly intelligent and able persons do fall prey to crippling depression." *MacGregor*, 786 F.2d at 1053-54.

*Simon*, at 1107.  Following *Simon*, the Court finds that the ALJ's cursory conclusion that recent treatment notes and exams by other providers show "intact cognition, good memory, and good concentration as evidenced by normal eye contact and no distracting hallucinations" (Tr. 3402) fails to establish a "genuine" inconsistency.  To the contrary, the Court's review of the evidence shows Plaintiff's significant symptoms have persisted and that other providers have noted these symptoms too.  For example, a psychological assessment on April 29, 2015 during a hospital admission for worsening depression, PTSD

symptoms, and intensifying suicidal ideations described Plaintiff's "pervasive difficulties with interpersonal relationships." (Tr. 2345).  The assessment indicated she "may benefit from interpersonal effectiveness skills to assist [ ] in developing more stable relationships and an ability to interact with others" (*Id.*).  Similarly, a psychiatric evaluation on May 5, 2015 after Plaintiff was Baker Acted by the Alachua County Police Department for "expressing suicidality, desiring to end life due to worsening depression" noted Plaintiff "recently had PTSD symptoms of nightmares, flashbacks, intrusive thoughts, hypervigilance, that are triggered whenever she smells oil burning, that her stomach would then get queasy, nervous, that she would start sweating really bad … also triggered by loud noises" (Tr. 1233-1235).  The pervasiveness of Plaintiff's severe symptoms is also evident from the notes of Plaintiff's Community Support Mental Health Program case managers.[11] The ALJ referred to one of these notes, dated May 14, 2019, in support of his conclusion that the record revealed Plaintiff's "appropriate behavior with a full range affect" (Tr. 3402 citing Ex.28/3 (Tr. 4448)).  Although the ALJ referenced this note in discussing Dr. Sharma's treatment, the note was authored by case manager Debra Gilligan (not Dr.

---

[11] Plaintiff's participation in this Community Support Mental Health Program was implemented as part of her Psychiatry Treatment Plan issued in January 2019 and renewed in April 2019.  The plan specifies that Plaintiff is at risk because she has chronic suicidal ideations without a plan or intent; has barriers to care due to her chronic psychiatric symptoms without remission; and her chief complaints are chronic PTSD and depressive disorder with chronic suicidal ideations (Tr. 4517-4519, 4566-4569).  The plan notes that Plaintiff has significant psychosocial and contextual factors, namely chronic medical problems, exposure to war, and inadequate social support (Tr. 4518, 4567).  The plan's goals are: 1) lose weight; 2) learn how to be more comfortable around people; 3) spend more time doing enjoyable activities to overcome her social isolation; 4) improve experiences of physical and emotional well-being; 5) decrease suicidal thoughts. (Tr. 4568-4569).

Sharma) and demonstrates Plaintiff's psychosocial impairments.  On this date, Gilligan transported Plaintiff from her home to a park for socialization with other veterans. Plaintiff participates in this program, which is designed to "promot[e] psychosocial recovery, improved adaptive functioning, and greater community integration and independence," one to three times a week, depending on her needs (Tr. 4448-1449). As Plaintiff acknowledges, the fact that she needed this level of intensive case management each week supports Dr. Sharma's opinions.  In fact, Plaintiff testified that the only reason she no longer is hospitalized is because she sees either her case manager or her therapist (Marks) three times weekly and calls them often (Tr. 4660).  The case managers' progress notes are consistent with the extreme or marked limitations and Dr. Sharma's opinions. *See generally* Tr. 4474-4475 (May 8, 2019, suicidal ideations last night, intermittent auditory hallucinations of noises and visual hallucinations of people); Tr. 4486 (April 29, 2019, suicidal thoughts on Saturday following argument with roommate); Tr. 4487-4488 (April 25, 2019, still hearing voices, "presents with ability to connect through conversation and complete circles of communication when cued"); Tr. 4493 (April 24, 2019, "somewhat depressed … but I'm fine, suicidal thoughts last night, hearing non-command mumbled voices frequently and seeing people walking"); Tr. 4512 (ran out of medicine for anxiety so stopped taking all meds, thought about running into a truck, has since re-started meds, did not call crisis center because did not want to be Baker Acted, does not need to go in-patient); Tr. 4565 (June 24, 2019, exhibited minimal recent decline due to

anxiety related to daughter's wedding and therapist on vacation, agreed to participate in social skills training, currently at high risk for suicidal behaviors).[12]

Additionally, in remanding this case, the Court recognizes that in evaluating a claimant's medical records an ALJ must take into account "the fundamental differences between the relaxed, controlled setting of a medical clinic and the more stressful environment of the workplace." *Simon*, at 1107 (quoting *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000)) ("for a person who suffers from an affective disorder or personality disorder marked by anxiety, the work environment is completely different from home or a mental health clinic"). *See also Schink*, 935 F.3d at 1263 ("it is not inconsistent—or even that unlikely … that a patient with a highly disruptive mood disorder, in a structured one-on-one conversation with a mental health professional, might be capable of 'be[ing] redirected' from his 'tangential' thought processes so as to 'remain on topic.'"); *Castro v. Acting Comm'r of Soc. Sec.*, 783 F.App'x 948, 956 (11th Cir. 2019) ("Without more, we cannot say that [the treating physician's] observations of Castro's judgment, insight, thought process, and thought content in a treatment environment absent work stressors

---

[12] As Plaintiff points out, the October 23, 2004 exam referred to by the ALJ in support of his conclusion that "exam findings dating back to beginning of the relevant period are also inconsistent with the symptom severity asserted by Dr. Sharma" is also problematic (Tr. 3401). The note, cited because it documented Plaintiff's "non-descriptive mood and calmed affect (Ex. 13F/13)," is a nursing shift change note from 12:30 a.m. that also indicated "Vet lies in bed and is observed with her eyes closed during my initial patient rounds" (Tr. 1762). This note was part of an in-patient psychiatric stay from October 17-23, 2014 due to "debilitating depression," "support system unable to manage intensity of symptoms safely," "anxiety and associated signs/symptoms increasing/ uncontrolled," and "impulsive, agitated, unable to follow directions" (Tr. 1768).

were inconsistent with his assessments about the limitations she would face in a day-to-day work environment").

In sum, while the ALJ correctly notes that the ALJ is not required to cite to each and every mental status exam finding, when viewed in light of the record evidence and the regulations, the Court cannot conclude the decision is supported by substantial evidence.   It is undisputed that Dr. Sharma is a specialized treating physician (a psychiatrist) who treated Plaintiff for the entirety of the relevant time frame (beginning prior to her 2014 onset date through late 2019).   And he is the only treating doctor who has submitted opinions.   His opinions are consistent with the bulk of other evidence in the file, including opinion evidence from Plaintiff's therapist, Bettina Marks, LCSW (who treated Plaintiff in conjunction with Dr. Sharma at the VA during the entirety of the lengthy relevant time frame), and the ALJ failed to clearly articulate good cause for disregarding them.   While a LCSW, as an "other source," is not "acceptable medical source," the ALJ should consider such opinions nonetheless.   *See* 20 C.F.R. § 416.927. According, on remand, the ALJ should reconsider LCSW Marks' opinion too.

### B. Remaining Issues

In light of the remand, it is unnecessary to address the remaining issues.   However, the ALJ's error may have affected his RFC determination, and thus, the ALJ will need to reconsider his assessment of Plaintiff's RFC in re-weighing Dr. Sharma's opinions. Moreover, on remand, the ALJ should consider Plaintiff's PTSD diagnosis in the sequential evaluation process.

Accordingly, it is hereby

## V.    Conclusion

Accordingly, after consideration, it is hereby **ORDERED**:

   1.   The decision of the Commissioner is reversed and remanded for further proceedings.[13]

   2.   The Clerk is directed to enter final judgment in favor of the Plaintiff and close the case.

   **ORDERED** in Tampa, Florida, on this 17th day of September, 2021.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

---

[13] Plaintiff requests a reversal for an award of benefits. *See* Doc. 29, p.57.  A court may do so "where the [ALJ] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Here, the Court cannot conclude that the cumulative effect of the evidence establishes disability without any doubt.  *See Stewart v. Comm'r of Soc. Sec.*, 746 F.App'x 851 (11th Cir. 2018) (denying plaintiff's request for court to grant benefits where "she ha[d] only shown that the ALJ failed to properly assess [her treating doctor's] medical opinion, and she ha[d] not shown that the record establishes that she was disabled without any doubt").